# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE AT NASHVILLE
## Assigned on Briefs May 12, 2026

## STATE OF TENNESSEE v. RODERICK DARNELL STAFFORD

**Appeal from the Criminal Court for Davidson County**
**No. 2023-D-2126    Jennifer Smith, Judge**

_____

**No. M2025-01230-CCA-R3-CD**

_____

Defendant, Roderick Darnell Stafford, was indicted by the Davidson County Grand Jury for two counts of aggravated assault with a deadly weapon in Counts 1 and 2, one count of possessing a firearm after being convicted of a felony drug offense in Count 3, and one count of possessing a firearm after being convicted of a misdemeanor crime of domestic violence in Count 4. Defendant pleaded guilty as charged in Counts 2 and 3, with the trial court to determine the length, manner, and alignment of service. After a sentencing hearing, the trial court sentenced Defendant to four years' confinement for Count 2 and five years' confinement for Count 3, ordering the sentences to run consecutively for an effective sentence of nine years' confinement. The remaining counts were dismissed. On appeal, Defendant argues that the trial court erred by (1) imposing enhanced sentences, (2) ordering consecutive alignment of his sentences, and (3) ordering him to serve his sentences in confinement. After review, we remand the matter to the trial court for entry of judgment forms for Counts 1 and 4. In all other respects, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed and Case Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and STEVEN W. SWORD, JJ., joined.

David Von Wiegandt, Nashville, Tennessee, for the appellant, Roderick Darnell Stafford.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Brian Ewald, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

At the plea hearing, the State summarized the factual basis of the plea agreement as follows:

> [O]n January 24[,] 2023, at approximately 4:30 p.m., officers responded to [Andrew Jackson Courts] in Davidson County, in response to a report of a person with a weapon. They made contact with one of the victims, Brenda Stafford.
>
> According to Ms. Stafford, [D]efendant . . . is her brother-in-law, and on January 24[, Defendant] came to the area of Ms. Stafford's residence holding two handguns and threatening to shoot Ms. Stafford and her son Juwaun Martindale. The victims were in fear of their life.
>
> This incident was captured on video surveillance[.] The video shows [Defendant] approached the victim and her son holding two guns in his hands and waving them around.
>
> . . .
>
> And [Defendant] has previously been convicted of a felony drug offense which prohibits him from carrying a weapon.

Defendant stipulated to the State's recitation of the facts, and he pleaded guilty as a standard offender to aggravated assault with a deadly weapon in Count 2 and possessing a firearm after being convicted of a felony drug offense in Count 3. As part of the agreement, Defendant agreed to have the length, manner, and alignment of his sentences determined by the trial court after a sentencing hearing. In addition, the plea agreement specified that the remaining counts would be dismissed. The trial court accepted the plea agreement and set the case for a sentencing hearing.

At the sentencing hearing, the State introduced Defendant's presentence report, which documented Defendant's seventeen prior convictions between 1997 and 2017. The convictions included seven counts of assault; one count of resisting a stop, frisk, halt, arrest, or search; one count of criminal impersonation; one count of driving without a license; one count of possessing a Schedule II drug—cocaine, less than 0.5 grams; two counts of criminal trespass; one count of casual exchange; one count of theft of a vehicle; and one count of violating the driver's license law.

The State also introduced surveillance footage obtained from a camera at Andrew Jackson Courts. The footage showed Defendant arriving at Andrew Jackson Courts in a black SUV and immediately entering a building. Minutes later, Defendant exited the building and left Andrew Jackson Courts in his SUV, but he returned around eleven minutes later. Upon returning, Defendant parked on the side of the road and approached a white sedan occupied by Mr. Martindale. As Mr. Martindale exited the sedan to confront Defendant, Defendant produced two handguns from his person. In response, Mr. Martindale removed his sweatshirt, partially pulled down his pants, and placed a handgun on the ground. During this exchange, various individuals, including an unnamed man standing next to Mr. Martindale's sedan, congregated at various distances around the confrontation. Nevertheless, Defendant continued to verbally engage with Mr. Martindale and repeatedly and erratically waved his two handguns in multiple directions. Defendant disengaged from and reengaged with the confrontation multiple times, pointing the handguns at Mr. Martindale upon each reengagement. Defendant eventually returned to his SUV and drove out of view, and Mr. Martindale picked up his handgun and ran out of view in the direction of Defendant's SUV.

Defendant testified that his brother was killed in 2017 while he was incarcerated for another matter. He claimed that charges were brought against a suspect of the killing but were dismissed after Ms. Stafford told law enforcement that the death was Defendant's brother's fault. Defendant claimed that Ms. Stafford and Mr. Martindale were in the same home when his brother was killed. Defendant testified that he "tr[ied] to get answers" from Ms. Stafford and Mr. Martindale regarding the death of his brother, but "they avoided [him]." Defendant further testified that Mr. Martindale began threatening Defendant's daughter, prompting Defendant to obtain two handguns.

Defendant testified that on the day of the incident, he went to speak with Ms. Stafford at her residence in Andrew Jackson Courts regarding Mr. Martindale's threats. Defendant asked Ms. Stafford to tell Mr. Martindale to leave his daughter alone. Defendant also spoke with Ms. Stafford about his brother's death, but he told Ms. Stafford that he "didn't care nothing about the death" and that he "let that go." Defendant testified that his conversation with Ms. Stafford was "calm" and that the two "sat there and talked on the sidewalk outside the building." Defendant admitted that he went inside the building to speak with Ms. Stafford at one point during the conversation, but he denied having a handgun on his person, claiming that he left the handguns in his SUV. After he finished speaking with Ms. Stafford, Defendant left Andrew Jackson Courts and went to the store.

In a somewhat confusing recitation, Defendant testified that he drove "back through Andrew Jackson [Courts]" to "see where [his] daughter was at." When he approached the premises, he saw Mr. Martindale sitting in a white sedan parked on the side of the street.

Defendant parked his SUV and approached Mr. Martindale's sedan on foot with two handguns "in [his] pockets." Defendant claimed that Mr. Martindale said, "[M]an, cool, man," when he saw Defendant approaching. Defendant asked Mr. Martindale about his threatening Defendant's daughter. Mr. Martindale exited the sedan, and the unnamed man, whom Defendant identified as Mr. Martindale's friend, approached. Defendant claimed he noticed that Mr. Martindale and the unnamed man had handguns, so Defendant decided to pull out his handguns and tell Mr. Martindale to "[q]uit messing with [his] f[****]ing kids." Defendant acknowledged that Mr. Martindale took off his sweatshirt, partially pulled down his pants, and placed a handgun on the ground to show Defendant he was unarmed. Defendant asserted that he kept himself armed because the unnamed man still possessed a handgun.

Defendant explained that he and Mr. Martindale argued for a few minutes regarding Mr. Martindale's threatening his daughter. Defendant attempted several times to disengage from the confrontation, but Defendant testified that he kept reengaging because Mr. Martindale "just ke[pt] talking reckless, talking about what he was going to do, I'm going to do this to you, I'm going to shoot you, I'm going to get you." Defendant stated that when he eventually returned to his SUV and drove away, Mr. Martindale "pick[ed] up a gun" and attempted to "shoot at [his SUV]."

Defendant testified that he "fe[lt] bad for what [he] did" and claimed that "if [he] could take it back, [he] would take it back." He explained, "I was thinking off of actions." Defendant admitted that he should never have gone to Ms. Stafford's residence.

Defendant further admitted that he was convicted for possessing cocaine in 2013 and that he received a five-year sentence of probation for the conviction. However, Defendant violated his probation for failing a drug screening. He testified that he was ordered to serve seventy-six days' incarceration for the violation but was released on probation again. Defendant admitted that he violated his second probation for failing a second drug screening, and he was placed in incarceration for another thirty days before being released on probation once more. Defendant testified that during this third probationary period, he pled guilty to felony theft.

The State argued that enhancement factors one, three, and ten applied. *See* T.C.A. § 40-35-114(1) ("[D]efendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range"), (3) ("The offense involved more than one (1) victim"), (10) ("[D]efendant had no hesitation about committing a crime when the risk to human life was high"). As to factor one, the State relied on Defendant's seventeen prior convictions. As to factors three and ten, the State emphasized Defendant's "wielding and waving and threatening with two firearms" while

- 4 -

bystanders were present nearby. Based on these factors, the State argued that Defendant should be sentenced to six years' confinement on each count.

The State also sought consecutive sentencing, relying on consecutive sentencing factors one, two, and four. *See id.* § -115(b)(1) ("[D]efendant is a professional criminal who has knowingly devoted [D]efendant's life to criminal acts as a major source of livelihood"), (2) ("[D]efendant is an offender whose record of criminal activity is extensive"), (4) ("[D]efendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high"). The State argued that factor one was applicable "due to [Defendant's] gaps in employment reflected in his presentence report, as well as his [] felony drug offense." As to factor two, the State once again emphasized Defendant's prior seventeen convictions. Finally, the State argued that the application of factor four was appropriate based on Defendant's conduct in this case and his seven prior assault convictions.

Defendant conceded that the application of enhancement factor one was appropriate based on his criminal record. However, Defendant contested the application of enhancement factors three and ten because the indictment only listed one victim and Defendant attempted to walk away from the confrontation several times. Furthermore, Defendant argued that mitigating factor two "obviously" applied, *see id.* § -113(2) ("[D]efendant acted under strong provocation"), and that the "catch-all" mitigating factor applied because he was "defending his family," was attempting to investigate his brother's death, and took responsibility for his crime. *See id.* -113(13) ("Any other factor consistent with the purposes of this chapter").

Defendant further argued that consecutive sentencing was inappropriate. He asserted that consecutive sentencing factor one was inapplicable because "there [was] absolutely no proof that he has knowingly devoted himself to [] criminal acts as a major source of livelihood[.]" Defendant also denied that his criminal history was extensive, emphasizing that only two of the seventeen convictions were felonies and his last assault conviction occurred in 2006.

Finally, Defendant asked to be sentenced to probation or Community Corrections. He argued that his crime "d[idn't] rise to the level of being so heinous" that incarceration was appropriate to avoid depreciating its seriousness. *See id.* § -103(1)(B). Defendant also highlighted his familial support, his then-current employment, and the presentence report's recommendation that Defendant complete an anger management program.

The trial court found enhancement factor one applicable, explaining that Defendant had seventeen prior convictions that included seven assault convictions. The trial court also applied enhancement factors three and ten based on "multiple people [being] around

as [D]efendant was waving two different guns around [at] various individuals[.]" Based on this conduct, the trial court believed there were clearly multiple victims and that Defendant had no hesitation about threatening their lives. Furthermore, the trial court refused to apply any mitigating factors. It explained, "There was no reason for this behavior to begin with. [Defendant] could have withdrawn . . . but kept coming back. . . . And I don't find anything in the testimony before me that was credible to the extent that there was any mitigation of his conduct." Based on these findings, the trial court sentenced Defendant to four years on Count 2 and five years on Count 3.

As to whether to run the sentences consecutively, the trial court found that consecutive sentencing factor one was inapplicable because there was insufficient evidence that Defendant was "a professional criminal." The trial court also determined that consecutive sentencing factor four was inapplicable because a finding that Defendant was a "dangerous offender" required "some additional findings . . . that the circumstances surrounding the commission of the offenses were aggravated." The trial court explained, "[B]ased upon what I saw, [Defendant's conduct was not] particularly aggravated in this case beyond . . . similar types of offenses that have come before this Court." However, the trial court applied consecutive sentencing factor two, finding that Defendants "record of criminal activity [was] extensive" by relying on his seventeen prior convictions. Based upon its findings, the trial court ordered Defendant's sentences in Counts 2 and 3 to run consecutively to one another.

Finally, the trial court found that Defendant "repeatedly demonstrated that he [wa]s not a good candidate for alternative sentencing." It emphasized that Defendant "has been given an opportunity to be on alternative sentencing" but "has failed those opportunities." The trial court expressed an expectation that Defendant would violate the terms of any alternative sentencing in this case as well. Based upon these findings, the trial court sentenced Defendant to an effective sentence of nine years' confinement.

Defendant appealed.

*Analysis*

*Length of Service*

Defendant argues that the trial court abused its discretion by imposing enhanced sentences. Specifically, Defendant asserts that the trial court erred by applying enhancement factors three and ten and by declining to apply mitigating factors two and thirteen, and he requests this Court to reduce the length of his sentences for each count to three years. Defendant concedes that the trial court properly applied enhancement factor one. The State argues that the trial court did not abuse its discretion.

"[S]entences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). Stated differently, this Court is "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out" in the Sentencing Act. *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that cause an injustice to the complaining party." *State v. Gevedon*, 671 S.W.3d 537, 543 (Tenn. 2023) (quoting *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010)). The party challenging a sentence bears the burden of demonstrating its impropriety. T.C.A. § 40-35-101, Sentencing Comm'n Cmts.; *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In reaching its decision, the trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement made by the defendant on his own behalf; and (8) the results of the validated risk and needs assessment conducted by the department and contained in the presentence report. *See* T.C.A. §§ 40-35-102, -103, -210(b). Additionally, the sentence imposed "should be no greater than that deserved for the offense committed" and "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." *Id.* § -103(2), (4).

While a trial court should consider enhancement and mitigating factors, they are advisory only. *Id.* § -113, -114; *see also Bise*, 380 S.W.3d at 701. A trial court's misapplication of an enhancement or mitigating factor does not invalidate the presumption of reasonableness so long as the trial court articulates reasons consistent with the purposes and principles of sentencing. *Bise*, 380 S.W.3d at 705-06. "'The application of a single enhancement factor can justify an enhanced sentence.'" *State v. Rollins*, No. E2022-00890-CCA-R3-CD, 2023 WL 4078700, at *5 (Tenn. Crim. App. June 20, 2023) (quoting *State v. Banks*, No. M2019-00017-CCA-R3-CD, 2020 WL 5015888, at *10 (Tenn. Crim. App. Aug. 25, 2020)), *perm. app. denied* (Tenn. Oct. 13, 2023).

Defendant pleaded guilty as a standard offender to one count of aggravated assault with a deadly weapon in Count 2 and one count of possessing a firearm after being convicted of a felony drug offense in Count 3. Aggravated assault with a deadly weapon is a Class C felony. T.C.A. § 39-13-102(d)(1)(A)(i)(*a*). Possessing a firearm after being

convicted of a felony drug offense is also a Class C felony. *Id.* § -17-1307(b)(3). The sentencing range for a standard offender convicted of a Class C felony is three to six years. *Id.* § 40-35-112(a)(3). The trial court imposed a four-year sentence for Count 2 and a five-year sentence for Count 3. Thus, both of Defendant's sentences are within range.

In determining the length of Defendant's sentences within that range, the trial court considered the evidence admitted at the sentencing hearing, including Defendant's presentence report and testimony. The trial court considered the enhancement and mitigating factors presented by the parties. The trial court considered the nature and characteristics of Defendant's criminal conduct in this case. Specifically, it emphasized that "[t]here were multiple people around as the [D]efendant was waving two different guns around and ranting[.]" The trial court found Defendant's conduct in this case to be "highly dangerous behavior[.]" The trial court also considered alternative sentencing but ultimately found Defendant not to be a "good candidate." Therefore, we find that the trial court's determinations as to the length of Defendant's sentences are "consistent with the purposes and principles set out" in the Sentencing Act, so they are entitled to a presumption of reasonableness. *See Carter*, 254 S.W.3d at 346.

Defendant has failed to overcome this presumption. He argues that the trial court misapplied enhancement factors three and ten and improperly declined to apply mitigating factors two and thirteen. However, even assuming that Defendant is correct, a trial court's misapplication of an enhancement or mitigating factor does not invalidate the presumption of reasonableness. *Bise*, 380 S.W.3d at 705-06. Moreover, Defendant concedes that the trial court properly applied enhancement factor one, which requires a finding that "[D]efendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range[.]" *See* T.C.A. § 40-35-114 (1). The record supports this finding as evidenced by Defendant's seventeen prior convictions in a twenty-year span. The application of this single factor "justif[ies] Defendant's] enhanced sentence[s]." *See Rollins*, 2023 WL 4078700, at *5 (citations and internal quotations omitted). Therefore, the trial court did not abuse its discretion in determining the length of Defendant's sentences, and Defendant is not entitled to relief on this issue.

*Alignment of Service*

Defendant next argues that the trial court erred by ordering his sentences in Counts 2 and 3 to be consecutively aligned. He submits that his criminal history was not sufficiently extensive to warrant consecutive service of his sentences. The State counters that the trial court did not abuse its discretion. We agree with the State.

- 8 -

Trial courts are vested with discretion as to whether to align sentences concurrently or consecutively. *State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013). Tennessee Code Annotated section 40-35-115(b) provides a list of circumstances that, if proven by a preponderance of the evidence, support a trial court's decision to run a defendant's sentences consecutively. As relevant here, one such circumstance is a showing that "[t]he defendant is an offender whose record of criminal activity is extensive[.]" T.C.A. § 40-25-115(b)(2); *see also State v. Adams*, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997) ("Extensive criminal history alone will support consecutive sentencing") (citing *State v. Stockton*, 733 S.W.2d 111, 112-13 (Tenn. Crim. App. 1986)). "[T]he applicable standard of appellate review for a challenge to the imposition of consecutive sentences is abuse of discretion with a presumption of reasonableness." *Pollard*, 432 S.W.3d at 853.

The trial court based its decision to run Defendant's sentences in Counts 2 and 3 consecutively on its finding that Defendant's "record of criminal activity [was] extensive." *See* T.C.A. § -115(b)(2). The record supports that determination. As detailed above, Defendant's presentence report showed that Defendant had seventeen prior convictions between 1997 and 2017, including seven assault convictions. This history amply supports the trial court's decision to consecutively align Defendant's sentences for Counts 2 and 3 based on Defendant's being "an offender whose record of criminal activity is extensive." *See id.*; *see also Adams*, 973 S.W.2d at 231. The trial court did not abuse its discretion, and Defendant is not entitled to relief on this issue.

### Manner of Service

Finally, Defendant contends that the trial court abused its discretion by ordering him to serve his sentences in confinement. He insists that the trial court should have considered him a favorable candidate for probation and sentenced him to an alternative sentence or a period of split confinement. The State submits that the trial court did not abuse its discretion. We agree with the State.

A defendant is eligible for probation if the sentence imposed is ten years or less. T.C.A. § 40-35-303(a). Although "probation shall be automatically considered by the court as a sentencing alternative for eligible defendants," the defendant bears the burden of "establishing suitability" for probation. *Id.* § -303(b). "This burden includes demonstrating that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *Carter*, 254 S.W.3d at 347 (Tenn. 2008) (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)).

Tennessee Code Annotated also provides "advisory sentencing guideline[s]" that a trial court "shall consider" when determining whether a defendant is a favorable candidate for alternative sentencing. T.C.A. § -102(6)(D). A defendant who is sentenced as an

especially mitigated or standard offender and who has committed a Class C, D, or E felony should generally be "considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" *Id.* § -102(6)(A). However, "a defendant who is being sentenced for a third or subsequent felony conviction involving separate periods of incarceration or supervision shall not be considered a favorable candidate for alternative sentencing." *Id.*

Trial courts should also look at the following considerations in deciding whether a sentence of confinement is appropriate:

(A) Confinement is necessary to protect society by restraining an individual who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

*Id.* § -103(1). Additionally, the sentence imposed "should be no greater than that deserved for the offense committed" and "should be the least severe measure necessary to achieve the purpose for which the sentence is imposed." *Id.* § -103(2), (4).

An "abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

First, Defendant contends that the trial court should have considered him a favorable candidate for probation because "he ple[aded] guilty to two counts of [] C felon[ies] as a standard offender" and was not "sentenced to a third or subsequent felony involving separate periods of incarceration[.]" Defendant appears to rely on our supreme court's decision in *State v. Ashby*, 823 S.W.2d 166 (Tenn. 1991), for the assertion that "the trial court must presume that the defendant is subject to alternative sentencing" if "the requirements for [favorable candidacy in] T[ennessee] Code Ann[ontated section] 40-35-102(6) are met[.]" However, *Ashby* was decided before the General Assembly passed the 2005 amendments to the sentencing statute. Under the version of the sentencing statute effective at the commission of Defendant's crimes in this case, a court was required to "consider, but [wa]s not bound by, th[e] advisory sentencing guideline" set forth in Code

section -102(6). *See* T.C.A. § 40-35-102(6)(D) (2023). In contrast, the version of Code section -102(6) considered in *Ashby* lacked this "advisory" language, rendering the presumption in favor of favorable candidacy mandatory where the statutory requirements were met. *See id.* (1991). Therefore, insofar as Defendant attempts to rely on *Ashby* for the assertion that the trial court was *required* to consider Defendant a favorable candidate for alternative sentencing pursuant to Code section -102(6), his reliance is misplaced.

Instead, the trial court was merely required to consider whether Defendant was a favorable candidate for probation, and it did exactly that. Specifically, the trial court considered whether Defendant was a "good candidate for alternative sentencing" and found that Defendant "repeatedly demonstrated" that he was not one, emphasizing that Defendant "has been given an opportunity to be on alternative sentencing" but "has failed those opportunities." Based upon these findings, the trial court ordered Defendant to serve his sentences for Counts 2 and 3 in confinement pursuant to Code section 40-35-103(C), allowing a sentence of confinement where "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to [D]efendant[.]" This decision is supported by the record. At the sentencing hearing, Defendant admitted that after being sentenced to probation in a previous case, he violated that probation for failing a drug screening and "trespassing." Based on this violation, Defendant served seventy-six days in confinement before having his probation reinstated. Nevertheless, Defendant violated his probation a second time for having failed a second drug screening. Defendant served thirty days in confinement for his second violation before having his probation reinstated a second time. Defendant admitted that he pleaded guilty to theft during this third probationary period. Given this history, the trial court did not abuse its discretion by ordering Defendant to serve his sentences in confinement based on its finding that "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to [D]efendant[.]" *See id.* Defendant is not entitled to relief on this issue.

*Judgments*

Our review of the record reveals that the trial court did not enter judgment forms reflecting the dismissal of Counts 1 and 4. *See* Tenn. R. Crim. P. 32(e)(3) ("If the defendant is found not guilty or for any other reason is entitled to be discharged, the court shall enter judgment accordingly."); *State v. Berry*, 503 S.W.3d 360, 364 (Tenn. 2015) (order) ("For charges resulting in a not guilty verdict or a dismissal, the trial court should 'enter judgment accordingly' as to the respective count."). Therefore, we remand the case to the trial court for entry of judgments reflecting the dismissal of Counts 1 and 4.

**CONCLUSION**

Based on the foregoing, we affirm the judgments of the trial court and remand the matter for entry of the appropriate judgment forms.


_S/Timothy L. Easter_
TIMOTHY L. EASTER, JUDGE